UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x  INDEX NO.:
TAMMY HAMILTON,

                              Plaintiff,

-against-

                                                              **COMPLAINT**
KINGS SECURITY SERVICES INC.,                                 **JURY TRIAL DEMANDED**
EVANS IMAFIDON, individually, and
CARLOS (LAST NAME UNKNOWN), individually,

                              Defendants.
-------------------------------------------------------------------x

      Plaintiff, TAMMY HAMILTON , (hereinafter "Plaintiff") through her counsel,

SLATER SLATER SCHULMAN LLP hereby submits this Complaint and complains of the

Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

   U.S.C §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

   1991, Pub. L. No. 102-166 ("Title VII"), New York State Human Rights Law, New York

   State Executive Law § 296, et seq. ("NYSHRL"), New York City Human Rights Law,

   New York City Administrative Code § 8-502(a),et. seq.("NYCHRL") and  seeks damages

   to redress the injuries Plaintiff suffered as a result of being sexually harassed, wrongfully

   terminated, discriminated against due to gender, and retaliation.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§

   1331and 1343.

3.  The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city laws pursuant to 28 U.S.C. §1367.

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within the Southern District of New York.

## PROCEDURAL PREREQUISITES

5.  On March 18, 2024, Plaintiff received a Right to Sue letter from the EEOC.

6.  Plaintiff satisfied all administrative prerequisites and is filing this case withing (90) days of receiving a Right to Sue letter.

## PARTIES

7.  Plaintiff is an individual female who resides in the Bronx , New York.

8.  Defendant Kings Security Services, Inc. (hereinafter "Defendant" and "Defendants") is located at 1900 Crotona Avenue 1st floor, Bronx, New York.

9.  Defendant Kings Security Services, Inc. provides a variety of security services including bodyguard services, patrol services, escort services, and undercover guards.

10. Defendant is a privately owned security service company with around 500 employees.

11. Defendant Kings Security Services is a covered employer within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., NYSHRL, and Title VII, and at all relevant times, employed Plaintiff.

12. At all times relevant Plaintiff Hamilton was an employee of Defendant King Security.

13. At all times relevant Defendant Evans Imafidon (hereinafter "Imafidon") is the founder of Kings security.

14. At all times relevant Defendant Imafidon had hire and fire authority over Plaintiff Hamilton.

15. At all times relevant Defendant Carlos (Last Name Unknown) (hereinafter "Carlos") was the human resource manager for Kings security.

16. At all times relevant Defendant Carlos had hire and fire authority over Plaintiff Hamilton.

## FACTS

17. On or about September 2021, Plaintiff was hired as a Security Guard for Defendant Kings Security.

18. Plaintiff experienced a hostile work environment immediately upon hire.

19. In or around September 2021, while Plaintiff was at Defendants office signing her on boarding paperwork with Defendant Imafidon and Defendant Carlos, Plaintiff overheard Defendant's Supervisor Sam (Last Name Unknown) ("Sam") yell at an employee on the phone and say, **"You do what the fuck I say!"**

20. Defendant Imafidon told Plaintiff not to pay Defendant's Supervisor Sam any mind.

21. Defendant Carlos told Plaintiff, "He's just like that."

22. Plaintiff responded to Defendant Imafidon and said it was disrespectful to speak to employees that way.

23. Plaintiff was bewildered to hear Defendants' supervisors address their employees in such a manner.

24. Plaintiff experienced discrimination based on gender immediately upon hire.

25. Defendant first assigned Plaintiff to a construction site where she was constantly called a "bitch" by two fellow male security guards.

26. Defendant's construction site security guards (names unknown) referred to Plaintiff as a **"bitch"** at every shift, about four days a week.

27. On Plaintiff's first day of work, Defendant's construction site security guards yelled at Plaintiff,

    a.  **"Shut the fuck up, bitch."**

    b.  **"I don't give a fuck who you are."**

    c.  **"I'll spit in your face."**

    d.  **"You little bitch."**

28. Plaintiff told Defendant's employees not to use such vulgar language while speaking to her.

29. Plaintiff told Defendant's employees to stop harassing her and that she was going to complain to the supervisor.

30. In response to this complaint, Defendant's construction site guard told Plaintiff,

    a.  **"They're not going to do anything; I've been with the company. They're not fucking doing anything about anything."**

31. On Plaintiff's first day, she made the first complaint to Defendant's President Imafidon.

32. In or around September 2021, Plaintiff called Defendant Imafidon and complained about the derogatory comments being made by Defendants' employees.

33. In response to Plaintiff's complaint, Defendant Imafidon told Plaintiff he would "handle it."

34. As such, Defendants had knowledge about the discrimination, sexual harassment, and hostile work environment Plaintiff was experiencing.

35. Later in the day, Plaintiff realized Defendant Imafidon took no action, as the harassment and discrimination continued.

36. Plaintiff called Defendant's Human Resource Manager Carlos and made the second complaint.

37. Plaintiff's second complaint was about the harassment and discrimination as well as Defendant Imafidon's lack of urgency in responding to her first complaint.

38. Plaintiff told Defendant Carlos that despite Defendant Imafidon's promise, the discrimination and harassment had not been handled.

39. As such, Defendants had knowledge about the discrimination, sexual harassment, and hostile work environment Plaintiff was experiencing.

40. The following day, Plaintiff made the third complaint.

41. Plaintiff called Defendant Imafidon and followed up regarding her first complaint.

42. In this complaint, Plaintiff told Defendant Imafidon that she feels uncomfortable at the assignment due to the harassment.

43. In response to the third complaint, Defendant Imafidon told Plaintiff, **"I did something about it. I handled it."**

44. When Plaintiff asked what actions Defendant Imafidon took to alleviate the hostility, Imafidon told Plaintiff, **"I will handle it. I have to wait for a different assignment to become available."**

45. Defendant Imafidon then forced Plaintiff to remain at the construction site assignment for two more months until a different assignment became available.

46. During those two months, Defendant's employees continued to refer to Plaintiff as "bitch," and harassed Plaintiff.

47. Two months after Plaintiff consistently complained of harassment and discrimination, in or around November 2021, Defendant Imafidon transferred Plaintiff to a security assignment at a school.

48. Despite Plaintiff being transferred from a construction site to a school, the harassment and discrimination from Defendant's employees towards Plaintiff continued.

49. Plaintiff and Defendant's Security Guard, Imshon (Last Name Unknown) ("Imshon") ,started working at the school on the same day.

50. Immediately upon hire, Defendant's Security Guard Imshon started to sexually harass Plaintiff and made several comments about her body.

51. Defendant's security guard Imshon told Plaintiff,

    a. **"You look nice."**

    b. **"You have a nice body."**

    c. **"You have a nice butt."**

    d. **"Your butt looks soft."**

    e. **"Do you work out?"**

    f. **"It must be fun to have sex with you."**

    g. **"We would be a nice couple."**

52. Plaintiff protested every time Defendant's Security Guard Imshon made an inappropriate comment to her.

53. When Defendant's Security Guard Imshon made these comments, Plaintiff tried to change the topic, but the harassment continued.

54. Defendant's Security Guard Imshon sat very close to Plaintiff throughout the shift.

55. Defendant's Security Guard Imshon made Plaintiff uncomfortable and forced her to continually change her seat throughout the day to get away from him.

56. However, Defendant's Security Guard Imshon continued to stand up, follow Plaintiff, and sit next to Plaintiff—invading her personal space and making her feel uncomfortable.

57. The harassment and hostile work environment continued.

58. Defendant's Security Guard Imshon stared and leered at Plaintiff's buttocks regularly.

59. Defendant's Security Guard Imshon's leering became more obvious when he made comments about Plaintiff's buttocks.

60. As a result, when walking with Defendant's Security Guard Imshon, Plaintiff made sure not to walk in front of Defendant's Security Guard Imshon, as to avoid him staring and leering at her buttocks.

61. The hostile work environment persisted throughout the shift.

62. At the end of the shift, the co-workers were required to exchange phone numbers in the event that someone needed a shift covered in the future.

63. Plaintiff, however, felt uncomfortable sharing her number with Defendant's Security Guard Imshon.

64. Defendant's Security Guard, Dandy (Last Name Unknown) ("Dandy"), asked Plaintiff why she did not want to share her phone number.

65. Plaintiff explained to Defendant's Security Guard Dandy that Defendant's Security Guard Imshon had been sexually harassing her all day and as a result, she did not feel comfortable or safe sharing her phone number.

66. Defendant's Security Guard Dandy said he would talk to the company's President on Plaintiff's behalf.

67. Throughout the day, Plaintiff called Defendant Imafidon at least seven times to complain about the sexual harassment from Defendant's Security Guard Imshon.

68. Each time Plaintiff called, Defendant's receptionist told Plaintiff that Defendant Imafidon was not in the office, despite Plaintiff being able to hear Defendant Imafidon in the background.

69. On one occasion, Defendant's Receptionist told Plaintiff that Defendant Imafidon was in a meeting. Then, Plaintiff heard Defendant's Receptionist and Defendant Imafidon laugh together. Plaintiff was discouraged at this point and felt her complaints were being ignored.

70. Plaintiff called Defendant's Human Resource Manager Carlos multiple times throughout the day, but he too ignored Plaintiff's calls.

71. Finally, after the workday, Plaintiff was able to reach Defendant Imafidon around 9:00 p.m. via phone.

72. On this phone call, Plaintiff made another complaint. This complaint was about Defendant's Security Guard Imshon sexually harassing her throughout the shift.

73. Defendant Imafidon responded to Plaintiff's complaints by saying,

   a. **"First of all, I don't know if you're lying."**

   b. **"Why didn't you tell me?"**

   c. **" I'm not removing him [Imshon] and I'm not firing him [Imshon]."**

   d. **"You're not moving. You are staying at this site."**

   e. **"Now I have to find someone last minute."**

74. Defendant Imafidon's dismissive comments made Plaintiff feel silenced and discouraged.

75. Because Defendant Imafidon took no action to alleviate the ongoing hostility, Plaintiff was forced to tell Defendant Imafidon that she will continue to work at the company but will be looking for different sites on the scheduling mobile app.

76. Defendant Imafidon told Plaintiff that he would follow up with her about her complaint of sexual harassment.

77. Defendant Imafidon, however, never followed up with Plaintiff.

78. Rather than taking action to alleviate the harassment, hostility, and discrimination, Defendants retaliated against Plaintiff.

79. The following morning, Plaintiff called Defendant's Human Resource Manager Carlos to complain about the discrimination, harassment, hostile work environment, and lack of action taken by Defendants.

80. During this conversation, Plaintiff complained of her treatment and asked Defendant Human Resource Manager Carlos what action will be taken.

81. Defendant's Human Resource Manager Carlos told Plaintiff not to resign from her job and assured Plaintiff that the company will look into the issue and then inform her of the course of action that will be taken.

82. In the afternoon, Plaintiff realized Defendant revoked Plaintiff's access to the scheduling mobile app.

83. In the evening, Plaintiff called Defendant's Human Resources Manager Carlos and asked why her access to the scheduling app was revoked.

84. Defendant's Human Resources Manager Carlos told Plaintiff, **"You resigned."**

85. Plaintiff was shocked to hear this, as she never resigned.

86. Plaintiff then realized Defendant discharged her in response to her consistent complaints of sexual harassment, discrimination, and hostility.

87. When Plaintiff resisted this false claim, Defendant's Human Resource Manager Carlos told Plaintiff, **"The company has been through this before, we have a lawyer,"** implying they have a history of retaliation and discrimination.

88. In response to Plaintiff's many complaints of sexual harassment, Defendants' disconnected Plaintiff from Defendant's mobile app, prohibiting her from looking for a new shift, and thus, discharged her.

89. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

90. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendants.

91. The above are just some of the examples of unlawful conduct to which Defendants subjected Plaintiff on an ongoing continuous basis.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Any Individual Defendant)

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint. Defendant exhibited a pattern of practice of discrimination and retaliation.

93. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42.U.S.C. § 2000e(f).

94. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e(b).

95. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discriminate against an employee because of such employee's gender/sex.

96. Defendant violated Plaintiff's rights afforded by Title VII when Defendant discriminated against Plaintiff because of her gender. Defendant created and maintained a hostile work environment, conducive to sexual harassment, wrongful termination and discrimination based on gender/sex and were it not for Plaintiff's gender, Defendant would not have discriminated against Plaintiff.

97. Defendant's unlawful acts were intentional, willful, malicious, and in violation of Plaintiff's rights afforded by Title VII.

98. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and other future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Not Against Any Individual Defendant)

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act,42.U.S.C. § 2000e(f).

101. Pursuant to Title VII, 42 U.S.C. § 2000e-3(a)an employer may not discriminate against any of its employees because the employee has opposed any practice made unlawful by Title VII.

102. Defendant violated Plaintiff's rights afforded by Title VII when Defendant retaliated against Plaintiff in response to her complaints of gender discrimination and sexual harassment. Defendant terminated Plaintiff after she engaged in the protected activity of complaining of gender discrimination.

103. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

104. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

## AS FOR A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW

105. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106. New York State Executive Law§296 provides that "it shall be an unlawful discriminatory practice for an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

107. Defendants engaged in unlawful discriminatory employment practice when they discriminated against Plaintiff based on her gender/sex and created and maintained a hostile work environment. Were it not for Plaintiff's gender/sex, Defendants would not have subjected Plaintiff to sexual harassment and a hostile work environment. Plaintiff

hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

108. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law§296.

## AS FOR A FORTH CAUSE OF ACTION
## FOR RETALIATION UNDER NEW YORK STATE LAW

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

110. New York State Executive Law §296(7) provides that "it shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices for bidden under this article."

111. Defendants engaged in such unlawful discriminatory practice when they terminated Plaintiff in response to her complaints of gender/sex discrimination and sexual harassment.

## AS FOR A FIFTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER NEW YORK STATE LAW

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113. New York State Executive Law§296 (6) provides that "it shall be unlawful discriminatory practice or any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

114. Defendants Imafidon and Carlos (Last Name Unknown) engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding

and abetting, inciting, compelling and coercing the discriminatory conduct Plaintiff was subjected to by her employer and co-workers.

## AS FOR A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER CITY LAW

115.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

116.  The Administrative Code of City of NY § 8-107 [4] provides that "Employment. It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person: to represent that any employment or position is not available when in fact it is available; to refuse to hire or employ or to bar or to discharge from employment such person; or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

117.  Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative  Code Title 8, §8-107(4)by creating and maintaining discriminatory conditions, and otherwise discriminating against the Plaintiff because of her gender/sex. Defendants subjected Plaintiff to sexual harassment and a hostile work environment based on her gender.

118.  Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS FOR A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER CITY LAW

119.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs
of this complaint.

120.  New York City Administrative Code Title 8, §8-107(7) provides that "It shall be an
unlawful discriminatory practice for any person engaged in any activity to which this
chapter applies to retaliate or discriminate in any manner against any person because such
person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint,
testified or assisted in any proceeding under this chapter, (iii) commenced a civil action
alleging the commission of an act which would be an unlawful discriminatory practice
under this chapter."

121.  Defendants engaged in an unlawful discriminatory practice in violation of New York
City Administrative Code Title 8, §8-107 (7) by discriminating against Plaintiff because
of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS FOR A EIGHTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER CITY LAW

122.  New York City Administrative Code Title 8, §8-107(6) provides that "It shall be an
unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the
doing of any of the acts forbidden under this chapter, or to attempt to do so."

123.  Defendants Imafidon and Carlos (Last Name Unknown) engaged in an unlawful
discriminatory practice in violation of New York City Administrative Code Title 8, §8-
107 (6) by aiding, abetting, inciting, compelling and coercing the above discriminatory,
unlawful and retaliatory conduct.

124.  Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of New York City Administrative Code Title 8.

**AS FOR A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE
NEW YORK CITY ADMINISTRATIVE CODE SUPERVISORY LIABILITY**

125.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

126.  Section 8-107(13) entitled Employer liability for discriminatory conduct by employee,

agent or independent contractor provides:

An employer shall be liable for an unlawful discriminatory practice based upon the

conduct of an employee or agent which is in violation of any provision of this section

other than subdivisions one and two of this section. b. An employer shall be liable for an

unlawful discriminatory practice based upon the conduct of an employee or agent which

is in violation of subdivision one or two of this section only where: the employee or agent

exercised managerial or supervisory responsibility; or the employer knew of the

employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to

take immediate and appropriate corrective action; an employer shall be deemed to have

knowledge of an employee's or agent's discriminatory conduct where that conduct was

known by another employee or agent who exercised managerial or supervisory

responsibility; or the employer should have known of the employee's or agent's

discriminatory conduct and failed to exercise reasonable diligence to prevent such

discriminatory conduct.

127.  Defendants violated the above section as set forth herein.

**JURY TRIAL DEMANDED**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Melville, New York
       June 13, 2024

                Respectfully submitted,

                SLATER SLATER SHCULMAN LLP

                *John C. Luke, Jr.*
                John C. Luke, Jr.
                445 Broad Hollow Road, Suite 419
                Melville, New York 11747
                (631) 420- 9300
                *Attorneys for Plaintiff*

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Myspace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.